**TALLY TOGS, INC., Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. 73 Civ 1098 MIG.**

United States District Court,
S. D. New York.

May 7, 1974.

---

Strassberg & Strassberg, New York City, for plaintiff.

Bigham, Englar, Jones & Houston, New York City, for defendant; John L. Conners, New York City, of counsel.

GURFEIN, District Judge:

The plaintiff, Tally Togs, Inc., a New Jersey corporation, sues the defendant, Insurance Company of North America, a Pennsylvania corporation, to collect on its insurance policy No. CTL 00 68 19, denominated "Garment Contractors Floater," issued June 26, 1969 for a period of one year and renewed with various endorsements through the date of the loss on June 21, 1972. *Liability* is conceded. The action is concerned only with the insurance *coverage limits* afforded under the policy.

Plaintiff commenced this action February 13, 1973 in the Supreme Court of

the State of New York. Defendant removed it to this Court on the ground of diversity of citizenship with the requisite jurisdictional claim. 28 U.S.C. § 1441. In lieu of trial, the parties have stipulated the facts.

The property in question here, children's clothes in various states of manufacture, was lost as a result of flooding, due to Hurricane Agnes, and damaged plaintiff in the conceded amount of $37,769.23 (Stip. of Facts, ¶ 3). At the time of the loss the property was on the premises of *Crown Royale, Inc.*, located on Route 11 in Cloverdale, Virginia. Crown Royale, Inc., a Virginia corporation, was an affiliated or subsidiary corporation of another Virginia corporation, *Shenandoah Textiles, Inc.* (Stip. of Facts, ¶ 2). Plaintiff had delivered the property to Shenandoah Textiles, Inc. ("Shenandoah"), a garment contractor used by the plaintiff and listed in the schedule under Section 3(a).[1] Plaintiff claims it was unaware of the fact that upon delivery to Shenandoah the property would be further delivered to Crown Royale, Inc. which was not listed in the schedule under Section 3(a). "At the time such property was delivered to Shenandoah, [Shenandoah] had a garment contracting premises located at 106 South Main Street, Bridgewater, Virginia. It was plaintiff's understanding at the time, that the manufacture of its property into finished garments would be performed at the foregoing Bridgewater, Virginia premises of Shenandoah and that the plaintiff was not aware un-

til after the flood loss that its property was being manufactured at the Cloverdale location. . . ." (Stip. of Facts, ¶ 4).

It is the contention of the plaintiff that the loss occurred, within the meaning of the policy, at the premises of Shenandoah and that, therefore, the limit of liability set forth in the then current policy (Endorsement # 7) referable to Shenandoah as a scheduled contractor under Section 3(a) of the policy should apply as the measure of plaintiff's recovery. That limit was $35,000. The defendant insurer contends that the measure of recovery falls within the coverage of the policy with respect to unscheduled or unnamed contractors, or $10,000 (Section 3b).

The issue is whether the loss falls within the *scheduled contractors* coverage of the policy so as to make the liability of defendant $35,000 or within the *unscheduled contractors* coverage so as to make the defendant's liability $10,000.

Plaintiff argues that under the schedule of contractors, referred to in Section 3(a), it is not required that the property lost or damaged, be at the particular location or address specified in the schedule as long as such property was under the control of the particular contractor named in such schedule. Plaintiff therefore contends that the addresses given for the various contractors in such schedule merely *identify* the particular contractor and are not to be construed as requiring that the property at the

---

1. Section 3, 3(a) and 3(b) read as follows: "Section 3. This policy also covers the property insured while temporarily detained on the premises of contractors and sub-contractors within the limits of the Continental United States (excluding Alaska and Panama Canal Zone) for the purpose of performing work on the property for the account of the assured. It is understood and agreed that throwsters or other yarn processors, weavers, finishers or other cloth finishing works, printers, dyers, spongers, shrinkers, tanners or testing houses are not deemed to be contractors or sub-contractors within the meaning of this policy. This policy does not cover in or on premises of the Assured.

The liability of this Company under this section shall not exceed the following limits in any one loss, disaster or casualty, including salvage charges, sue and labor or other expenses, or all combined:

(a) While on premises of contractors or sub-contractor (if no contractors or sub-contractors are to be scheduled, insert "NONE").

| Name | Address | Limit of Liability |
|---|---|---|
|  |  |  |

(b) While on premises of any contractor or sub-contractor not scheduled herein $_____ "

time of loss be at such particular named address in the schedule. Thus, the listing of Shenandoah Textiles, Inc. under Section 3(a) at one address, would mean that the coverage extended to its subsidiary, Crown Royale, Inc., at another address. Plaintiff's argument is not compelling.

On the original schedule attached to the policy under Section 3(a), ten contractors are named; *eleven* different addresses are given; and in the third column headed "Limit of Liability" differing limits are set forth opposite each named contractor at a particular address.

Shenandoah Textiles, Inc. is listed twice. As contractor No. 10, its address is given as 106 S. Main St., Bridgewater, Va. with a limit opposite such address of $25,000. As Contractor No. 11, its address is given as 100–102 N. Main Street, Bridgewater, Virginia, with the same amount of coverage. Under plaintiff's construction of the policy, one reference to Shenandoah Textiles, Inc. would have been enough. The scheduling of Shenandoah twice rather than once, indicates that location was important in relation to the amount of coverage.

The policy was extended by Endorsement # 7, dated August 10, 1970, which provides in pertinent part as follows:

"It is hereby understood and agreed that the limits of liability as respects Locations #2 and #6 of Endorsement # 3 on the below mentioned policy are amended to read as follows: [Emphasis supplied].

Limit of Liability
Location #2, Letitia Shop     $20,000
Location #6, Shenandoah
Textiles, Inc.     $35,000"

(Emphasis supplied). The specific reference is to the "location" rather than to the contractor as an entity.[2]

Similarly, Endorsement # 11, dated June 26, 1972 and therefore not effective until after the loss at issue here, nevertheless sheds some further light upon the issue. In that schedule, Shenandoah Textiles, Inc. is listed three times as contractor number 8, 9, and 10,[3] with three different addresses. Under the column, "Limit of Liability" there are three different amounts for the three different addresses.

Were I to accept plaintiff's construction of the limited purpose of listing the address, and were plaintiff to sustain a loss at a fourth location under the control of Shenandoah, but at an address not listed in this schedule, it would be virtually impossible to discern the limit of liability that the parties had in mind for a loss at the unmentioned address.

Plaintiff's argument that the addresses given for the various contractors was merely for identification and not for purposes of limiting liability to property lost at that specific address, is further inconsistent with the specific language of the endorsements. Thus, for example, Endorsement # 3 by which the original schedule of contractors was replaced with a different schedule reads, "that the schedule of locations attached to the Garment Contractors Floater of the undermentioned policy is deleted in its entirety and the following is substituted theretofore;" [Emphasis supplied]. Thus, when particular contractors were named or deleted from the schedule, there was always reference to "location"—underlining the significance of the address of the contractors for purposes of coverage.

Plaintiff. points to the well-settled rule that where there is an ambiguous provision in an insurance contract, such ambiguity will be construed against the insurer. *See e. g.*, Trinidad Corp. v.

---

2. Pursuant to the option provided in Section 3(b), the operative limit provides, "While on premises of any contractor or sub-contractor not scheduled herein *$10,000.*"

3. As contractor number 10, Shenandoah is referred to as, "Shenandoah Textiles Inc. T/A Crown Royal Incorporated."

**468**

American Steamship Owners Mutual Protection & Indemnity Assoc. Inc., 229 F.2d 57, 58 (2 Cir.), cert. denied, 351 U.S. 966, 76 S.Ct. 1032, 100 L.Ed. 1486 (1956); Datatab, Inc. v. St. Paul Fire and Marine Insurance Co., 347 F.Supp. 36, 38 (S.D.N.Y.1972) ("premises"). While it is true that the insurance company could have been more explicit in delimiting what it meant by "on premises of contractors or sub-contractors," I do not find that its failure to do so made the provision ambiguous in the light of the foregoing. The general view is, moreover, that "place and locality are essential elements in describing the property insured . . . since a policy will not be extended to cover property not within the terms of the description. When location is an essential part of the description, there is no binding insurance when the property is not at the place specified." Couch, 1 Insurance 2d § 5:11 pp. 215–216. Location is essential to recovery, "where the property is not described other than by location." Appleman 4, Insurance Law and Practice, § 2350 at p. 361. I find that the location of the property was an essential part of the description of the property insured under Section 3(a). In this construction I am supported by the view of Judge Murphy in Premier Knitting Co., Inc. v. Reliance Ins. Co., S.D.N.Y., unofficially reported in 11 Fire and Casualty Cases 19 (1961). In construing a similar Garment Contractors Floater policy, the Court noted that since the loss occurred at the premises of one of the named contractors, "but at a different address" than that contained in the schedule of names and addresses, the loss "occurred 'while on premises of [a] contractor . . . not scheduled [in the policy].' "

Since the Crown Royale, Inc. premises in Cloverdale, Virginia were not included in the schedule under Section 3(a) at the time of the loss, plaintiff can recover no more than $10,000 pursuant to Section 3(b) providing for coverage of unscheduled contractors.

The foregoing represents the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

The Clerk is directed to enter judgment for the plaintiff in the sum of $10,000.